## GRANGER & ASSOCIATES LLC

40 FULTON STREET
23RD FLOOR
NEW YORK, NEW YORK 10038

---

TEL: (212) 732-7000
FAX: (212) 732-7001

April 25, 2017

**VIA ECF**

The Honorable I. Leo Glasser
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Dear Judge Glasser:

      Re:  United States v. Alexey Krutilin
           E.D.N.Y. Criminal Docket No. 17-cr-109 (ILG)

Dear Judge Glasser:

    I write with respect to the upcoming sentencing of Alexey Krutilin.  Mr. Krutilin pled guilty on March 8, 2017, to a one-count information charging him and codefendant Dmitrii Karpenko with conspiracy to violate the International Emergency Economic Powers Act in violation of 50 U.S.C. §§ 1705(a) and 1705(c) in connection with efforts by their Russia-based employer to export electronic equipment without first obtaining licenses as required from the Department of Commerce.

### I. MR. KRUTILIN'S PERSONAL BACKGROUND

    Mr. Krutilin was born in Stavropol, Russia, where he has lived most of his life and where he was still living at the time of his arrest.  He has one sibling, a twenty-three-year-old sister, and he remains close to her and to his parents.  His family is fully aware of his arrest and the circumstances of his case, and have remained strongly supportive of him.  At the time he was arrested, Mr. Krutilin lived in the same building where his sister and parents lived in a separate apartment.

    Mr. Krutilin's father is a sales manager for a small Russian company engaged in the sale of petroleum products, and his mother is a homemaker.  Although by economic standards he grew up in what could fairly be characterized as an average home, Mr. Krutilin realized as he grew up that he was wealthy in more important ways.  He was deeply inspired by his father's work ethic, and he became driven to find a vocation that would enable him to support his family

The Honorable I. Leo Glasser
April 25, 2017
Page 2

and to help friends.  He was likewise inspired by his parents' commitment to each other and to their children, particularly in light of all the couples he saw in Russia who did not stay together.  He developed a profound sense of family, hoping that his future would include children of his own to whom he could provide the support and sense of security that his parents gave him.

Mr. Krutilin attended Stavropol State Agrarian University and in 2011 completed a combined bachelor's and master's economics program with a specialization in global economics.  See Exhibit 1.  While enrolled there, he participated in an exchange program in the Netherlands, where he studied European economics in classes taught in English.  He also participated in a work-exchange program that enabled him to work for approximately three months as an amusement-park attendant at a hotel in Atlantic City, New Jersey.

Upon graduating from college, Mr. Krutilin served for a year in the Russian army, attaining the rank of Lance Sergeant.  Unable to find work after completing his military service and being honorably discharged in July 2012, Mr. Krutilin decided to further his education outside Russia in an effort to explore new opportunities.  He first attended Wimbledon English School in London and, after successfully completing the program in early 2013 and significantly improving his English-language skills, enrolled in the University of Greenwich in London, where he successfully completed a master's program in E-Logistics and Supply Chain Management in 2014.  See Exhibit 2.  Through this program, Mr. Krutilin was able to undertake a three-month internship as a sales manager at a company in Stavropol called Monocrystal. The company is the world's largest manufacturer of synthetic sapphire, which is used to make, among other products, iPhone screens and crystals for fine watches.

Mr. Krutilin then returned to Stavropol, where he managed to find employment as a purchasing manager at a company named Aelek.  The company is part of a group of Russia-based corporate entities controlled by an umbrella company called Abtronics that are involved in the export of technology from the United States and other countries.

## II.  THE OFFENSE CONDUCT

The government's investigation determined that various individuals at Aelek had been involved in purchasing electronic components on behalf of the company's customers using United States-based front companies and then arranging for shipment of the components to Russia, often via a third country.  In order to circumvent the need for the licenses required for much of the technology, individuals associated with Aelek or other companies controlled by Abtronics would submit fraudulent end-user information claiming that the technology would remain in the United States or was destined for a country where it could be shipped without a license.

The Honorable I. Leo Glasser
April 25, 2017
Page 3

Undercover agents for the Department of Homeland Security negotiated with one or more representatives of Aelek over the course of several months in 2016 for the export of such restricted electronic components, completing some transactions (the government deactivated the components prior to shipping them). The negotiations were conducted via email, Skype, and telephone with one or more Aelek representatives who used the aliases "David Powell" and "Simon Fox." As part of the government's sting operation, arrangements were made for a face-to-face meeting in the United States with "Powell" and "Fox." As of that point in time, neither Mr. Krutilin nor his codefendant Mr. Karpenko, who also was employed as a purchasing manager at Aelek, had been involved in the negotiations.

Apparently suspicious about the American suppliers, or perhaps simply in an abundance of caution (or both), Mr. Krutilin's employer instructed Messrs. Krutilin and Karpenko to make the trip, capitalizing on both their fluency in English and their prior lack of involvement in the both the previously completed and the contemplated transactions. The employer thus used Messrs. Krutilin and Karpenko as the proverbial "guinea pigs" or "canaries in the coal mine." Prior to that point in time, neither Mr. Krutilin nor Mr. Karpenko had identified themselves as "David Powell" or "Simon Fox," and they did so thereafter only because their employer had instructed them to do so.

Messrs. Krutilin and Karpenko then traveled to the United States as per detailed instructions provided by their employers, and they were arrested in Denver in October 2016.

Although it believed at the time of the arrests that Messrs. Krutilin and Karpenko had been the individuals who had interacted from Russia with the undercover agents and had identified themselves as Powell and Fox, the government, to its credit, has since acknowledged that it was mistaken and has not opposed a minor-role adjustment.

### III. LETTERS OF SUPPORT

Attached collectively as Exhibit 3 are letters of support from Mr. Krutilin's family and several friends, all of whom live in Russia. They speak eloquently to the character of a young man whose respect for and fascination with the United States undoubtedly played a role in his willingness to travel to Denver at his employer's behest. They describe a kind, gentle, and supportive man who is deeply respectful and considerate of his family and friends. All who know him consider him to be one of those all-too-rare individuals who can be counted on for support in times of trouble. He is also an intellectually curious person whose thirst for knowledge and to see new places led him to travel abroad to further his education.

The Honorable I. Leo Glasser
April 25, 2017
Page 4

### IV. MR. KRUTILIN'S SENTENCE

In light of the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), and its progeny such as Rita v. United States, 551 U.S. 338 (2007), Gall v. United States, 552 U.S. 38 (2007), and Kimbrough v. United States, 552 U.S. 85 (2007), the basic framework for sentencing is now settled. First, the Court must determine the now-advisory Sentencing Guidelines range. See Gall v. United States, 552 U.S. at 46. Second, the Court must undertake its overarching statutory charge to impose a sentence that, considering "the nature and circumstances of the offense and the history and characteristics of the defendant," is "sufficient, but not greater than necessary":

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. §§ 3553(a), 3553(a)(1), and 3553(a)(2). Third, the Court should also consider "the kinds of sentences available . . . any pertinent Sentencing Commission policy statement . . . the need to avoid unwarranted sentence disparities among similarly situated defendants . . . and, where applicable, the need to provide restitution to any victims of the offense." United States v. Cavera, 550 F.3d 180, 188-89 (2d Cir. 2008), cert. denied, 556 U.S. 1268 (2009)(citations omitted).

In determining an appropriate sentence, a court "may not presume that a Guidelines sentence is reasonable," id. at 189, and the Guidelines should not be given more or less weight than any other factor. United States v. Carty, 520 F.3d 984, 991 (9th Cir.), cert. denied, 553 U.S. 1061 (2008). See also Nelson v. United States, 555 U.S. 350, 352 (2009)(per curiam)("The Guidelines are not only not mandatory on sentencing courts; they are also not to be presumed reasonable.")(emphasis in original). A court "must instead conduct its own independent review of the sentencing factors, aided by the arguments of the prosecution and defense." United States v. Cavera, 550 F.3d at 189. As a result, a sentencing court is "generally free to impose sentences outside the recommended range." Id. See also United States v. Sanchez, 517 F.3d 651, 660 (2d Cir. 2008)(a district court has broad latitude to "impose either a Guidelines sentence or a non-Guidelines sentence."); United States v. Daidone, 124 Fed. Appx. 677, 678 (2d Cir. 2005)(as the Guidelines are no longer mandatory, a departure is no longer

The Honorable I. Leo Glasser
April 25, 2017
Page 5

necessary in order for the sentencing court to impose a sentence below the Guidelines range). The Court's overall goal should be to impose a reasonable sentence, see, e.g., United States v. Guzman, 287 Fed. Appx. 956, 957 (2d Cir. 2008), and when considering the sentencing factors outlined in § 3553(a), "the judge is not prohibited from including in that consideration the judge's own sense of what is a fair and just sentence under all the circumstances." United States v. Jones, 460 F.3d 191, 195 (2d Cir. 2006).

To be sure, the Guidelines range as determined by the Court, although not mandatory, is an important factor for the Court to consider. But the Sentencing Guidelines "do not require a judge to leave compassion and common sense at the door to the courtroom." United States v. Milikowsky, 65 F.3d 4, 9 (2d Cir. 1995). As the United States Supreme Court has noted, "[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." Koon v. United States, 518 U.S. 81, 113 (1996). Accordingly, "[a]lthough the Guidelines remain 'the starting point and the initial benchmark' for sentencing, a sentencing court may no longer rely exclusively on the Guidelines range; rather, the court 'must make an individualized assessment based on the facts presented' and the other statutory factors." Beckles v. United States, 137 S. Ct. 886, 197 L. Ed. 2d 145, 153-54 (2017) (citing Gall v. United States, 552 U.S. 38, 49, 50 (2007)).

Mr. Krutilin makes no excuses for his conduct, and he takes full responsibility for it. He is deeply remorseful and deals daily with powerful feelings of embarrassment, humiliation, and failure. Although the Sentencing Guideline range would be 37-46 months' imprisonment (Level 21) were the Court to grant at least the two-level minor-role adjustment pursuant to U.S.S.G. § 3B1.2(b) that the government does not oppose, there are compelling reasons for the Court to consider exercising its broad discretion by imposing a sentence of time served.

First, Mr. Krutilin's conduct, while criminal, did not cause any conceivable damage to the security of the United States.

Second, Mr. Krutilin did not benefit directly from the transactions at issue and did not seek out a chance to be involved in them. He did not receive any extra compensation for agreeing to travel to Denver for the prearranged meeting. Indeed, he undoubtedly risked being fired had he refused the assignment.

Third, although perhaps not strictly qualifying as aberrant behavior within U.S.S.G. § 5K2.20, Mr. Krutilin's offense conduct was certainly aberrational and a "'short-lived' departure from a law-abiding life." United States v. Martinez, 207 F.3d 133, 137 (2d Cir. 2000).

The Honorable I. Leo Glasser
April 25, 2017
Page 6

       Fourth, a sentence of time served would be consistent with the sentences in other cases in which defendants have been convicted of similar or analogous conduct. See SUMMARY OF MAJOR U.S. EXPORT ENFORCEMENT, ECONOMIC ESPIONAGE, TRADE SECRET AND EMBARGO-RELATED CRIMINAL CASES, updated June 27, 2016, viewable at: https://www.justice.gov/nsd/files/export_case_list_june_2016_2.pdf/download.

       Lastly, since his felony conviction will likely end his chances of relocating to or again visiting the United States for at least the foreseeable future and perhaps for the rest of his life, Mr. Krutilin will suffer a significant collateral consequence due to his conviction.

       In sum, in light of the totality of circumstances presented here, I respectfully ask the Court to impose a non-Guidelines sentence of time served on Mr. Krutilin. I submit that such a sentence would be sufficient but not greater than necessary to achieve the goals and dictates of 18 U.S.C. § 3553.

       Thank you for your consideration.

                                                          Respectfully submitted,

                                                          Raymond R. Granger

cc:     AUSA Craig Heeren (by email)
          AUSA Peter Baldwin (by email)